UNITED STATES of America, Plaintiff–Appellee,

v.

Edward TERRY, Defendant–Appellant.

No. 89–10121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1989.

Decided Aug. 14, 1990.

As Amended Nov. 9, 1990.

Alan P. Caplan, San Francisco, Cal., for defendant-appellant.

Robert M. Twiss, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before SCHROEDER, NELSON and WIGGINS, Circuit Judges.

NELSON, Circuit Judge:

Defendant/Appellant Edward Terry was convicted for being a felon in possession of a firearm. He had been indicted on two drug related counts as well as the firearm count. There was a mistrial on the drug counts.

Terry appeals his conviction on four grounds. He argues that 1) the search of his residence where the gun was discovered was invalid; 2) the drug and firearm counts were misjoined; 3) there was not sufficient evidence to support his conviction; and 4) the trial judge erred by issuing a new instruction which redefined "constructive possession" without first affording counsel an opportunity to evaluate that instruction, formulate objections to it or to suggest a different response.

We find that there was sufficient evidence to convict and that the affidavit underlying the search warrant provided probable cause for the search. However, it was error for the district court to join all three counts and to instruct the jury in the midst of deliberations on a different and incorrect

definition of constructive possession. Therefore, we reverse the conviction and remand for retrial.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 1989, Terry intended to meet his wife and daughter at her parents' home in Pittsburg, California. That morning, however, his son David was arrested for possession of methamphetamine. After posting bond for his son, Terry took David to Terry's home. Shortly thereafter, two or three friends of David's arrived, stood in the driveway near Terry's pickup truck whose bed was covered, and spoke with David. Terry and a friend went into the house. After 15–20 minutes Terry came out and drove to Pittsburg.

Approximately 40 miles away from his residence, Terry was stopped by CHP Officer Paul Vacarezza. As he was driving behind Terry's truck, Vacarezza smelled a strong "chemical type" odor, which he suspected was methamphetamine. After following Terry's vehicle for awhile Vacarezza noticed a brownish liquid leaking from the bed of the vehicle. Vacarezza pulled the truck over.

Vacarezza and another officer first searched the cargo area of the truck under the cover. They found a gallon-size plastic milk container in a brown paper bag. Under the driver's side of the seat the police found plastic baggies containing a white powdery substance and $10,000 in U.S. currency bundled in mixed bills. The white powdery substance tested positive for methamphetamine. The brown liquid tested positive as Phenyl–2–Propanone (P–2–P), a precursor chemical for the manufacture of methamphetamine, which is itself a controlled substance under federal law. Terry was arrested and booked.

Eight days after Terry's arrest, Agent Wertman applied for a warrant to search Terry's home. Wertman's accompanying affidavit stated that in his experience methamphetamine traffickers usually keep currency and money derived from drug sales along with paraphernalia and records related to the sale of methamphetamine on their persons, in their residences or in attached structures. On the basis of this affidavit, a search warrant was issued.

Five days later, Agent Wertman and others searched Terry's home looking for methamphetamine and dangerous drugs, paraphernalia, records, articles of personal property showing the identity of persons in control of the premises, and currency. During the search the agents found nothing listed in the search warrant. However, Officer Stephen Harris found a shotgun on a shelf just inside the closet in the master bedroom.

Terry was subsequently indicted for possession of methamphetamine, distribution and possession of P–2–P with intent to manufacture methamphetamine, and being a felon in possession of a firearm. Because Terry had sustained three previous felony convictions between 1959 and 1973 the government included notice that it would seek sentence enhancement under the Armed Career Criminal Act. Before trial, Terry filed a Motion for Severance of Counts seeking to have the drug offenses tried separately from the firearm offense. The motion was denied.

At trial Agent Wertman and Officer Harris testified as to the actual seizure of the shotgun from the Terrys' bedroom closet noting that the gun was found on a shelf containing only the shotgun and men's boots. Wertman testified that the other side of the closet held only women's clothing. In addition to this testimony, the jury was read a stipulation that defendant had been convicted of a crime for which the maximum punishment included imprisonment in excess of one year and that the seized shotgun had been manufactured outside of the State of California.

One of Terry's witnesses, Mulcahy, testified that defendant had informed Mulcahy that he was not allowed to possess firearms because he was a felon. Paula Terry, appellant's wife, testified that the gun was given to her by her cousin for the purposes of protecting her family and that she knew her husband was not allowed to have guns. Paula also testified that she kept the shotgun on the shelf in the only closet which they shared. It was located on this shelf in

order to minimize their daughter's awareness of its presence and her ability to reach it. Paula Terry's cousin testified that he had given Paula the same shotgun that the government had seized.

At the end of the trial the district court agreed to use the jury instruction that both Terry and the government proposed. When the jury later expressed confusion over the language of the instruction, the judge submitted a new instruction to the jury using language substantially different from that of the first instruction. Defense counsel objected to the second set of jury instructions on constructive possession because its terms had not been defined to the jury and counsel had not been allowed to argue to the jury about how to evaluate the evidence in light of this instruction.

The jury delivered a verdict of "guilty" as to Count Three, the firearms charge, and were 8–4 in favor of acquittal on the drug charges. The Court declared a mistrial as to those counts.

Terry filed a motion opposing the imposition of an enhanced sentence pursuant to 18 U.S.C. § 924(e), which was denied. Terry was sentenced to the mandatory minimum term of imprisonment of 15 years without parole, a fine of $1000 and a 5–year term of supervised release. On March 9, 1989 Terry timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I. *Probable Cause to Issue Search Warrant*

#### A. Standard of Review

■ A magistrate's determination of probable cause to issue a search warrant is accorded great deference and is reversed only if that determination is clearly erroneous. *United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir.1987), *cert. denied* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). "[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would

uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1982) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir.1987). "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir.1987).

#### B. Legality of the Warrant

■ The warrant in this case was based on the Wertman affidavit. The affidavit contained two bases for probable cause: 1) the results of the search of Terry's truck; and 2) Agent Wertman's past experience that methamphetamine drug traffickers keep drugs, paraphernalia, records and money in their homes or adjoining structures.

A magistrate is permitted to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense. *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986); *United States v. Hendricks*, 743 F.2d 653, 655 (9th Cir.1984), *cert. denied* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985). He "need not determine that the evidence sought is *in fact* on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place.... The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.) (citations omitted), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985). Moreover, "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Fannin*, 817 F.2d at 1382.

The Ninth Circuit has recognized that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Angulo–Lopez*, 791 F.2d at 1399. Under the law of this circuit, then, Agent Wert-

man's first hand knowledge of Terry's possession of methamphetamine and his experience with other drug dealers provided the magistrate with "a reasonable ground to believe" that contraband might be found in Terry's residence. *United States v. Dammitz*, 495 F.2d 50, 55 (9th Cir.1974). We find, therefore, that the magistrate had a substantial basis for finding probable cause and issuing the warrant to search Terry's home.

## II. Joinder of the Drug Charges with the Firearm Charge

### A. Standard of Review

■ Misjoinder of charges is a question of law reviewed de novo. *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989); *United States v. Sanchez–Lopez*, 879 F.2d 541, 550 (9th Cir.1989).

### B. Misjoinder under Rule 8(a)

■ Before trial, Terry filed a Motion for Relief from Improper Joinder of Counts alleging that the drug charges (counts one and two) had been misjoined with the firearm charge (count three) in violation of Rule 8(a). It was denied. On appeal the government argues that the charges were not misjoined and that Terry waived appellate review by failing to renew the motion to sever at the close of the evidence.

Two offenses may be joined in the indictment under Rule 8(a) "only 'if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.'" *United States v. Smith*, 795 F.2d 841, 850 (9th Cir.1986) (quoting Fed.R.Crim.P. 8(a)), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987). The term "transaction" is to be interpreted flexibly and "may comprehend a series of related occurrences." *United States v. Kinslow*, 860 F.2d 963, 966 (9th Cir.1988), *cert. denied*, ——

U.S. ——, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989).

Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment. *See Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. Lane*, 474 U.S. 438, 447, 106 S.Ct. 725, 731, 88 L.Ed.2d 814 (1986); *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir.1988). The indictment in the case at bar clearly fails to allege any commonality between the first two counts and count III. Count I and II describe an event occurring on June 9, 1988 in San Joaquin County. Count III describes an event occurring on June 22, 1988 in another city and county. The drug crimes referred to in Counts I and II are wholly different from the possession of a firearm charge in Count III. No effort is made in the indictment even to suggest that the offenses are of the same or similar character or that they are part of the same transaction or parts of a common scheme.

In addition, the evidence necessary to prove Count III did not overlap with the evidence required to prove Counts I and II.[1] *Compare Schaffer*, 362 U.S. at 514–15, 80 S.Ct. at 947–48 (finding that when the indictment invites joint proof, the prima facie validity of joinder is shown); *United States v. Portac Inc.*, 869 F.2d 1288, 1294 (9th Cir.1989) ("Joinder is proper when the same facts must be adduced to prove each of the joined offenses."); *United States v. Montes–Cardenas*, 746 F.2d 771, 776 (11th Cir.1984) ("Two crimes are connected together if the proof of one crime constitutes a substantial portion of the proof of another."). When, as in this case, joined offenses are not connected and are not provable by the same evidence, joinder is improper. *United States v. Barney*, 568 F.2d 134, 136 (9th Cir.1978).[2]

---

1. At the trial, none of the evidence was applicable to both counts and none of the witnesses testified as to both counts.

2. The government argues that the charges can be joined because a gun found at a residence is integrally related to drug trafficking. They cite

■ A violation of Rule 8 "requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). Terry argues that he was prejudiced because his association with drugs would necessarily be highly inflammatory in the minds of jurors. We agree. A juror would inevitably be more disturbed about the idea of a "drug dealer" with a gun than a citizen who previously had committed some unknown crime. It is highly probable that this inculpatory characterization of Terry as a drug dealer influenced the jury in determining its verdict.[3]

■ Finally, the government argues that the issue of impermissible joinder has been waived because the defendant's "Motion for Relief from Improper Joinder of Counts for Trial Under Federal Rule of Criminal Procedure 8(a)" was not renewed at the end of the trial. While it is clear that a Rule 14 motion to sever must be renewed at the close of the evidence or it is waived, *United States v. Burgess,* 791 F.2d 676, 678 (9th Cir.1986), there is no such requirement for a Rule 8 motion.[4]

The rationale behind the renewal requirement in the Rule 14 context is inapplicable to Rule 8. A Rule 14 motion must be renewed in order to allow the trial court to assess whether the joinder was prejudicial and to prevent a defendant from deliberately failing to make a meritorious motion and waiting to see what verdict the jury returns. *United States v. Free,* 841 F.2d 321, 324 (9th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988).

A Rule 8 motion, in contrast to Rule 14, disputes the propriety of joining charges in the indictment. Rather than being decided at the discretion of the lower court judge it permits joinder only under certain specific circumstances. With Rule 8, unlike Rule 14, it is not necessary for the "trial court to assess whether a joinder is prejudicial at a time when the evidence is fully developed, the parties are best prepared and the witnesses' recollections freshest" because issue is whether the indictment was improperly joined. *Free,* 841 F.2d at 324. Because the propriety of a Rule 8 joinder is determined solely by the initial allegations of the indictment, there is no need to assess what actually happened in the trial. In addition, there is a requirement that in order to preserve the issue for appeal a Rule 8 motion must be made before jury deliberations. *See Smith,* 795 F.2d at 850.

---

to numerous cases none of which allowed the joinder of a drug charge with a firearm charge when the gun was not discovered at the same time and place as the drugs. All the cases cited by the government in support either involve firearms found in defendants' possession at the time of their arrests, *see U.S. v. Mason,* 658 F.2d 1263 (9th Cir.1981); *U.S. v. Moore,* 580 F.2d 360 (9th Cir.) *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), or guns and ammunition found during the same search or arrest which uncovered the drugs. *See U.S. v. Montes–Cardenas,* 746 F.2d 771 (11th Cir.1984); *U.S. v. Weiner,* 534 F.2d 15 (2nd Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *U.S. v. Romero,* 692 F.2d 699 (10th Cir.1982); *U.S. v. Mareno,* 658 F.2d 1120 (6th Cir.1981); *U.S. v. Cannon,* 472 F.2d 144 (9th Cir.1972). We never have held that, as a matter of law, a gun offense always can be joined with a drug offense.

3. The government suggests that the improper joinder was harmless error because the jury's split verdict indicated that they could separate the issues in their mind. A mixed verdict alone, however, it not dispositive. As five members of a divided *en banc* panel of the Eighth Circuit

said, we cannot say that 'the spillover effect of the joinder ... did not taint the jury's deliberation.... [A]bsent the prejudicial joinder the jury might have acquitted on more counts....' *U.S. v. Grey Bear,* 863 F.2d 572, 579 (8th Cir. 1988) (opinion of group of five judges who found joinder improper. Note that the district court's order finding joinder proper was affirmed by an equally divided vote of the court sitting *en banc*).

4. The government cites three cases in support of the proposition that a defendant waives appellant review if he fails to renew a Rule 8 motion. Two of the cases, *United States v. Free,* 841 F.2d 321, 324 (9th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988) and *United States v. Burgess,* 791 F.2d 676 (9th Cir.1986), discuss Rule 14 motions only. In the third, *United States v. Loya,* 807 F.2d 1483, 1494 (9th Cir.1987), the court required renewal of a pretrial motion that relied on both Rule 14 and Rule 8. The *Loya* court cited *Burgess,* 791 F.2d 676, suggesting that it was referring to the requirements of a Rule 14 motion. There was no discussion of the renewal requirements for a Rule 8 motion.

Thus, there is no opportunity for a defendant to "deliberately fail to make a meritorious motion." *Free*, 841 F.2d at 324. For the foregoing reasons, it is unnecessary to renew a Rule 8 misjoinder objection to preserve it for appeal.

### III. Sufficiency of the Evidence

#### A. Standard of Review

■ "In reviewing the sufficiency of the evidence, we determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." *United States v. Soto*, 779 F.2d 558, 560 (9th Cir.1986), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987).

#### B. Proof Required for Constructive Possession

■ To prove constructive possession, the government must prove "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the substance." *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir.1986). It is not the same as merely knowing the weapon is nearby. "The circumstances of each case must be examined to determine if there is 'such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession.'" *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir.1970) (quoting *United States v. Casalinuovo*, 350 F.2d 207, 209–11 (2nd Cir.1965)).

There are various ways to prove that a defendant has dominion and control. For example, "[i]f the defendant has exclusive control over the premises where contraband is found, then knowledge and control may be inferred." *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir.1985).

In the more difficult situation where the premises are shared by more than one person, the Ninth Circuit has found that if a party has knowledge of the weapon and both the power and the intention to exercise dominion and control over it, then he has constructive possession. *Cousins*, 427 F.2d at 384; *see also United States v. Rhodes*, 713 F.2d 463, 470 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983); *United States v. Espinosa*, 827 F.2d 604, 614 n. 6 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).[5]

■ Although the issue is close, we find that under the highly deferential standard of review there was sufficient evidence to sustain the verdict. The evidence against Terry centered on the fact that the firearm was found in the closet of his bedroom. Terry and his wife are the owners of the house and sole occupants of the bedroom where the firearm was found. Only Terry's wife prevented Terry from accessing the gun. Terry was the only person present when the home was searched. The gun was found on the shelf in the closet where both Terry and his wife kept their clothes. The shelf also held men's boots. Men's clothing was on the same side of the closet.

Terry provided evidence that the firearm had been given to his wife for her protection and that the only shelves in the closet were on the same side as the men's clothing. There was no evidence that he had ever touched the gun.

On the basis of this evidence, a rational trier of fact could find that Terry's knowledge of the gun's location and his unhindered access to it whenever his wife was not observing gave him constructive possession of the weapon.

### IV. Jury Instruction

#### A. Standard of Review

■ We review whether a jury instruction was an accurate statement of the law de novo. *See United States v. Spillone*, 879 F.2d 514 (9th Cir.1989) ("[W]hether a

5. The government has asserted incorrectly that they need only prove that Terry had the ability to exercise dominion and control. To prove constructive possession the government must produce evidence showing that a defendant *did* exercise ownership, dominion or control over the contraband itself or the premises or vehicle in which the contraband is concealed. *U.S. v. Shirley*, 884 F.2d 1130 (9th Cir.1989).

jury instruction misstated elements of a statutory crime is a question of law and is reviewed de· novo."); *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (questions of law reviewed de novo), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The de novo standard of review is appropriate where, as in this case, an objection was raised below to the jury instruction. Where no objection is made below, the appropriate standard of review is plain error. Fed.R.Crim.P. 30; *United States v. Kelm*, 827 F.2d 1319, 1324 (9th Cir.1987). We " 'determine whether, viewing the instructions as a whole, the court gave adequate instruction on each element of the case to ensure that the jury fully understood the issues,' and to determine 'whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party.' " *Espinosa*, 827 F.2d at 614 (quoting *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986)).

### B. Accuracy of the Constructive Possession Instruction

■ Both the government and Terry agreed to the first instruction given to the jury:

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or person, is then in constructive possession of it.

In the midst of jury deliberations, the foreman requested clarification of the term "intention at a given time". The court elected to give a broad "on or about instruction", a reminder that the instructions should be considered as a whole, and a rereading of the "constructive possession" instruction. The Court then asked the jurors if that answered their question. In response to the Court's inquiry, the foreman said:

At a given time, whether that did vary. The word 'intention' in that, there was no evidence that we could find that showed that an intention existed to use the weapon and therefore, maybe that would reduce the constructive—or eliminate the constructive possession in the mind of this one individual.

The court asked to be brought the Ninth Circuit Pattern Instruction Book. The Court then told the jury:

Let me now say having given that instruction I don't like it because you focused in on a problem in that instruction and it's use of the word 'intention.' Let me see if I have another instruction here that might help.

The court read to the jury a new definition of constructive possession:

Possession means having physical control of a thing. That control may be direct, as by actually holding the thing or indirect by having the power to control the thing while someone else may actually be holding it. The jury may find possession where one person alone has possession or where that person shares control with other persons.

The Court then told the jury, "See, that doesn't use that other—the intention aspect of that other instruction." The jury was then excused and a copy of the new instruction was delivered to the jury room.

The first constructive possession instruction given to the jury was "a correct statement of the law." *Espinosa*, 827 F.2d at 614, n. 6. The second instruction, however, would allow a jury to convict without finding all the necessary components of constructive possession. "While the term 'constructive possession' is not free from ambiguity", *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir.1970), none of this court's definitions of the term comport with the second instruction submitted to the jury.

Constructive possession "has been generally defined as knowingly having both the power and intention at a given time to exercise dominion or control over the property." *Id.; Rhodes*, 713 F.2d at 471. To sustain a conviction on the basis of constructive possession, "the Government was required to prove that [the defendant] had dominion and control of the [contraband] and knowledge of their existence. . . . 'Mere proximity to contraband, presence on property where it is found and association with a person or persons having control of it are all insufficient to establish constructive possession.' " *United States v. Castillo*, 866 F.2d 1071, 1086 (9th Cir.1988) (quot-

ing *United States v. Rodgriguez*, 761 F.2d 1339, 1341 (9th Cir.1985)); *United States v. Hernandez*, 876 F.2d 774, 778 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). Other constructive possession definitions are similar. "A person may not be convicted of illegal possession unless he knows contraband is present and is capable of exercising dominion and control over the contraband." *United States v. Penagos*, 823 F.2d 346, 350 (9th Cir.1987); *Rodriguez*, 761 F.2d at 1341; *United States v. Behanna*, 814 F.2d 1318, 1319 (9th Cir.1987). The government "must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed." *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989); *Soto*, 779 F.2d at 560.

All Ninth Circuit case law requires that the defendant have knowledge of the presence of the contraband as an element of constructive possession. The cases also add some element that distinguishes possession from mere presence or accessibility. It is not enough that a person has the power to control the contraband, in the sense that he simply is in the presence of the contraband and could reach out and take it. *Compare United States v. Behanna*, 814 F.2d 1318, 1320 (9th Cir.1987) (holding that the government must do more than show that the defendant was present as a passenger in the vehicle and within reach of the weapon.).

The 1985 Ninth Circuit Pattern Instruction given in this case by the lower court judge simply required that a person "hav[e] the power to control the thing". It would allow a conviction based on mere accessibility without knowledge or actual dominion or control. This error has been corrected in the 1989 Pattern Instructions which provide that "[a] person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it." *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 3.16 (1989).

Although the first instruction was accurate, its combination with the erroneous

supplementary instruction misled the jury. After the judge read the second instruction, the jury was given a written copy of it. The judge also emphasized to the jury that "I don't like" the first instruction. The court was clearly suggesting to the jury that the second instruction, which would allow conviction on a basis not permitted under the law, was the one they were to follow. Thus, we conclude that the constructive possession instruction given to the jury was improper and we reverse the conviction. *See United States v. Bagby*, 451 F.2d 920, 927 (9th Cir.1971) ("[A] conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue").[6]

## CONCLUSION

The judgment is REVERSED and the case is REMANDED for retrial.

---

6. In addition appellant argues that his sentence was improperly enhanced on the basis of a prior burglary conviction. Because we are re-versing the judgment against Terry it is unnecessary for us to reach the question of a proper sentence.