Curtis Hoyt YANCEY and Lee Roy Cloud *v.*
STATE of Arkansas

CA CR 99-1360          30 S.W.3d 117

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered October 25, 2000
[Petition for rehearing denied November 29, 2000. * ]

* HART and ROAF, JJ., would grant.

*Sam T. Heuer,* for appellants.

*Mark Pryor,* Att'y Gen., by: *Jeffrey Weber,* Ass't Att'y Gen., for appellee.

MARGARET MEADS, Judge. ■ Appellants, Curtis Yancey and Lee Cloud, each appeal from their conditional pleas of guilty to one count of possession of a controlled substance (marijuana) with intent to deliver, a Class C felony, for which each received four months in a regional punishment facility followed by four years' probation and a $2,000 fine. By agreement of the parties, these cases were consolidated for trial purposes. On appeal, appellants argue that the trial judge erred in refusing to grant their motions to suppress evidence found at their residences. We affirm. When reviewing a trial court's denial of a motion to suppress, the appellate courts make an independent determination based upon the totality of the circumstances and reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Embry v. State,* 70 Ark. App. 122, 15 S.W.3d 368 (2000).

At the suppression hearing, Arkansas Game and Fish Officer David Evans testified that on June 17, 1998, at approximately 9:30 p.m., he observed a Jeep going down a road into the woods in Monroe County. He followed the vehicle, and using night-vision equipment, he observed two persons he identified as appellants get out of the vehicle and begin to water some marijuana plants. He followed appellants back out to the highway and stopped the vehicle in front of Cloud's residence in Arkansas County. When he asked them what they were doing, appellants told Evans that they had been frogging, but they had not caught any frogs. Evans asked to look in the vehicle, and appellants consented. As he shone his flashlight into the Jeep, he saw gallon jugs and five-gallon cans, but he saw no frog-gigging equipment. Additionally, Evans noticed that appellant Cloud was wearing hip boots, but instead of being wet from frogging, the boots had dry dust on them. Finding nothing further, Officer Evans left.

The next day, Evans called the Monroe County Sheriff's department to report what he had found. When he did not hear back from them, he contacted Wendall Jines, a CID investigator

with the Arkansas State Police, and took him to the marijuana patch on June 19. Jines and another deputy maintained surveillance of the patch, and when no one appeared, they harvested three of the plants. They removed the remaining fifteen plants on June 22.

On June 22, 1998, Officer Evans appeared before Municipal Judge Norman Smith seeking a search warrant of each appellant's residence. In his affidavit, Evans stated:

> At approximately 9:30 p.m. on Wednesday, June 17, 1998, I, David Evans, a wildlife officer with the Arkansas County [sic] Game and Fish Commission, observed a vehicle, specifically a newer model red Jeep with a white hard top, going into a remote wooded area near the "Lookout" community in Monroe County, just over the Arkansas County line. I followed the Jeep with my lights off while using night vision equipment. I parked my vehicle at the end of the road and continued to follow the vehicle on foot. I observed two individuals, whom I recognized as Curtis Yancey and Lee Cloud, exit the Jeep carrying jugs. They appeared to be watering marijuana plants. I then returned to my vehicle undetected.

> After a short time, the vehicle exited the woods. I waited until the Jeep passed my location and I followed it back to the highway with my lights off. After turning onto the highway, I turned my lights on and followed the vehicle until it stopped at Lee Cloud's residence at the corner of Highway 33 and River Road.

> I stopped and talked to both individuals. Mr. Yancey was wearing briar pants and Mr. Cloud was wearing hip boots. The individuals stated that they had been out frogging. I asked to see the frogs and they replied that they had not gotten any frogs but I was welcome to look in the vehicle. I shined the flashlight through the window and observed several plastic jugs which appeared to be empty. I also observed some plastic jugs that appeared to be partially filled with liquid. A metal five gallon can of the type used to carry liquids or chemicals was also inside the vehicle.

> On Friday afternoon, June 19, 1998, at approximately 2:00 p.m., I, along with Chief Deputy Frank Borman and State Police Investigator Wendall Jines, returned to the area where Mr. Yancey and Mr. Cloud were observed watering the plants. A total of eighteen marijuana plants were found growing in the wooded area.

> On Friday night, June 19, between the hours of 7:00 p.m. and 11:00 p.m., Chief Deputy Frank Borman and State Police Investigator Wendall Jines returned to the area where Mr. Yancey and

Mr. Cloud were observed watering the plants. Three of the marijuana plants were harvested for evidence. The plants are now in the custody of the Arkansas State Police while awaiting transport to the Arkansas Crime Lab.

On Monday, June 22, at approximately 10:00 a.m., Borman, Jines, and Evans returned to the location and harvested fifteen additional plants. Two of these plants were growing in plastic buckets and five were growing in a blue ice chest.

Lee Cloud has, over the past several years, been convicted for possession of controlled substances on a number of occasions. Information and intelligence developed by different law enforcement agencies working within Arkansas County indicates that both Lee Cloud and Curtis Yancey have been involved, and continue to be involved, in the propagation, preparation, consumption and delivery of controlled substances, specifically marijuana.

Authority is now sought to search the residences of Curtis Yancey and Lee Cloud, as well as all outbuildings and the curtilage surrounding the residence, and all vehicles, boats and trailers found thereon, for the presence of controlled substances, paraphernalia used in the preparation, ingestion, storage, delivery, consumption or manufacture of controlled substances, records of controlled substance purchases and deliveries, proceeds of controlled substance sales and other items connected with those persons who use or deliver controlled substances.

The affidavit was signed by Evans and attested. Based upon this information, Judge Smith issued search warrants for each appellant's house and all outbuildings, boats, trailers, and vehicles. Marijuana was found at the residence of each appellant.

Appellants contend on appeal that the search warrants were fatally defective because they failed to forge a sufficient nexus between the marijuana seized and the search of the homes. Specifically, appellants contend that: (1) the affidavit failed to state any underlying circumstances for the conclusion that appellants were involved in drugs and failed to link the drugs to their homes; (2) the affidavit given in support of the search warrant was misleading in violation of *Franks v. Delaware*, 438 U.S. 154 (1978); and (3) the affidavit omitted any reference of time to any drug activity.

■ Appellants first argue that there was no sufficient nexus between the plants seized from the marijuana patch and the search

of their residences. They contend that it was illogical to conclude that marijuana would be found at their residences, because Evans did not find any contraband when he searched the Jeep and no one saw them harvest any of the marijuana plants. In support of this argument, appellants cite *Lunsford v. State*, 262 Ark. 1, 552 S.W.2d 646 (1977), for the following proposition:

> We have long since recognized that an affidavit which states a mere conclusion of an unidentified informant is not sufficient basis for a magistrate's finding probable cause for the issuance of a search warrant, under federal constitutional standards, and that it is necessary that some of the underlying circumstances from which the informant arrived at his conclusion be included.

262 Ark. at 3, 552 S.W.2d at 647. However, Evans's affidavit did not state a "mere conclusion"; rather, it included a recitation of what Evans personally observed, as well as information gathered by law enforcement agencies. Thus, *Lunsford* does not apply.

■ The task of the magistrate who issues the warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Our duty as a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id*. This approach was adopted by our supreme court in *Thompson v. State*, 280 Ark. 265, 658 S.W.2d 350 (1983), and followed by this court in *Wolf v. State*, 10 Ark. App. 379, 664 S.W.2d 882 (1984).

■ We are persuaded by the reasoning set forth in cases from the Ninth Circuit cited by the State. In *U.S. v. Pitts*, 6 F.3d 1366 (9th Cir. 1993), the court of appeals held that "a 'reasonable nexus' does not require direct evidence that the items listed as the objects of the search are on the premises to be searched. The magistrate must only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." 6 F.3d at 1369. A magistrate may "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986), and the magistrate may also rely on the conclusions of experienced law-enforcement officers regarding where evidence of a crime is likely to be found. *U.S. v. Terry*, 911 F.2d 272 (9th Cir.

1990). In the case of drug dealers, "evidence is likely to be found where the dealers live." *Id.* at 275; *United States v. Angulo-Lopez, supra.*

Other circuits have followed the Ninth Circuit's reasoning. In *United States v. Feliz,* 182 F.3d 82 (1st Cir. 1999), *cert. denied,* 120 S. Ct. 942, 145 L.Ed. 2d 819 (2000), the First Circuit held that there was a sufficient showing of probable cause to issue a search warrant for the appellant's residence based upon drug sales made away from the residence. In so holding, the court stated:

> The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather "can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime] . . . ."

182 F.3d at 88, citing *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir. 1979).

Likewise, the Seventh Circuit has held that warrants may be issued even in the absence of direct evidence linking criminal objects to a particular site. *See U.S. v. Lamon,* 930 F.2d 1183 (7th Cir. 1991); *U.S. v. Malin,* 908 F.2d 163 (7th Cir. 1990), *abrogation on other grounds recognized in United States v. Monroe,* 73 F.3d 129 (7th Cir. 1995). In *Lamon,* the court of appeals upheld a search warrant for appellant's principal residence for drugs and drug-related items, even though there was no evidence that appellant had ever sold drugs out of that location. In *Malin,* the search warrant for appellant's house was upheld based upon the fact that marijuana was seen growing in appellant's yard. In finding probable cause to search the house, the *Malin* court held that probable cause deals in probabilities that are the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 165-66 (quoting *Brinegar v. United States,* 338 U.S. 160 (1949), *reh'g denied,* 338 U.S. 839 (1949)).

In the present case, the magistrate considered the affidavit's recitation of the events of June 17-22 and the statement that the investigation by law-enforcement agencies indicated that both appellants had been and continued to be involved in the propagation, preparation, consumption, and delivery of marijuana. Apply-

ing a practical, common-sense assessment, we believe the judge who issued the search warrant had a substantial basis to conclude that probable cause existed and that marijuana would likely be found where appellants lived.

■ Moreover, even if the finding of probable cause for the issuance of the search warrant had been clearly erroneous, we would still uphold the search under the good-faith exception found in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the United States Supreme Court held that the Fourth Amendment exclusionary rule should not bar the use of evidence obtained by officers acting in reasonable reliance upon a search warrant issued by a detached and neutral magistrate that is later determined to be invalid. The Court stated:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.

468 U.S. at 921.

■ Here, Judge Smith determined that there was probable cause based upon Evans's affidavit and his questioning of Evans. The officers acted in reasonable reliance upon the warrants issued.

Though the dissent clearly does not believe that appellants' present and past cultivation of marijuana plants justifies a search of their homes, we think the magistrate could properly rely on the personal knowledge and observations of Officer Evans, the information and intelligence developed by area law enforcement, and basic common sense to reasonably conclude that appellants would likely have marijuana at their residences. Although there was no direct evidence that marijuana was in fact located at appellants' residences, we do not believe a reasonable nexus requires direct evidence under these facts.

Appellants next contend that Evans' affidavit was misleading in ·violation of *Franks v. Delaware, supra,* because Evans failed to state

that he did not find marijuana in the Jeep on the night of June 17. In *Franks*, the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155–56.

Appellants do not argue that Evans included a false statement, but rather that he failed to include the fact that he found no marijuana in the Jeep when he searched it. For an omission from an affidavit to justify the invalidation of a search warrant, the party challenging the validity of the search warrant must show that the affiant knowingly and intentionally, or with reckless disregard, omitted facts, and that if supplemented with the omitted information, the warrant would be insufficient to establish probable cause. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999). It is obvious upon reading the affidavit that no marijuana was found in the Jeep because Evans stated that he found only empty plastic jugs, some partially filled plastic jugs, and a five-gallon metal can. Moreover, had Evans found marijuana in the vehicle, that fact would surely have been included in the affidavit, as it would have made an even stronger case for issuing the warrants.

Appellants also argue that the officer placed false information in the affidavit when he stated that information developed by law-enforcement agencies indicated that appellants had been and continued to be involved in the "propagation, preparation, consumption and delivery of controlled substances, specifically marijuana." We agree with the State that appellants did not preserve this argument for review, as required by *Partin v. State*, 22 Ark. App. 171, 737 S.W.2d 461 (1987). Appellants did not meet the *Partin*

requirements. It is axiomatic that we do not address arguments raised for the first time on appeal.

■ Finally, appellants argue that the affidavit omits any reference of time to any drug activity in their homes. In support of this contention, they cite *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985), and *Ulrich v. State*, 19 Ark. App. 62, 716 S.W.2d 777 (1986). In both of those cases, the appellate courts reversed based upon the failure of the search warrants to mention time or establish a time. While some mention of time must be included in the affidavit for a search warrant, it can also be inferred from the information in the affidavit. *Collins v. State*, 280 Ark. 453, 658 S.W.2d 877 (1983).

■ Appellants are mistaken that the search warrant does not indicate a time frame. The marijuana was first observed on June 17, 1998, and the warrant was applied for on June 22. The affidavit includes the dates when Officer Evans first saw the marijuana and when he and the other officers removed the marijuana plants.

■ Appellants also argue that the addresses in the search warrant were not correct. However, an incorrect address is not a fatal defect. *Pike v. State*, 30 Ark. App. 107, 783 S.W.2d 70 (1992). Here, the search warrants identified with particularity the places to be searched. There is no argument that officers searched the wrong residences when executing the search warrants; therefore, if the addresses were incorrect, it is *de minimis*.

■ We cannot say that the trial judge's denial of appellants' motions to suppress the evidence found as a result of the execution of the search warrants was clearly erroneous. Therefore, we affirm.

Affirmed.

PITTMAN, JENNINGS, and CRABTREE, JJ., agree.

HART and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. Today the majority adopts a *per se* rule that if a person is probably a drug dealer, then as a matter of law, there is probable cause for the police to search his residence, even though there is no indication in the affidavit for search warrant that any drug activity ever took place at the person's residence. I must dissent.

As noted by the majority, on June 17, 1998, at approximately 9:30 p.m., Arkansas Game and Fish Officer David Evans observed appellants in the woods watering eighteen marijuana plants. On June 19 and 22, the police removed all of the plants. Also on June 22, Evans presented a municipal judge with an affidavit for a search warrant describing his observation of appellants and the removal of the plants. Evans further stated,

> Lee Cloud has, over the past several years, been convicted for possession of controlled substances on a number of occasions. Information and intelligence developed by different law enforcement agencies working within Arkansas County indicates that both Lee Cloud and Curtis Yancey have been involved, and continue to be involved, in the propagation, preparation, consumption and delivery of controlled substances, specifically marijuana.

Evans requested, and received, a search warrant to search appellants' residences, neither of which was anywhere near where the plants were confiscated.

An affidavit is sufficient only "if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place." Ark. R. Crim. P. 13.1(b). "'Reasonable cause to believe' means a basis for belief in the existence of facts which, in view of the circumstances under and purposes for which the standard is applied, is substantial, objective, and sufficient to satisfy applicable constitutional requirements." Ark. R. Crim. P. 10.1(h).

We review the totality of the circumstances when determining whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998). In *Tatum v. State,* this court stated:

> In judging the sufficiency of the affidavit based on information received from an informant, the magistrate issuing the warrant must make a practical, common sense decision based on all the circumstances set forth in the affidavit. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. While inferences the magistrate may draw are those which a reasonable person could draw, certain basic information must exist to support an inference. The practical common sense approach used

> to examine search warrants cannot cure omissions of fact that are undisputedly necessary. (Citations omitted.)

21 Ark. App. 237, 731 S.W.2d 227 (1987).

On appeal, appellants argued "there was no statement of any fact [in the affidavit] to show how the informants knew there was marijuana in the homes." I must agree, as there is, quite simply, no allegation in the affidavit even suggesting that there was probable cause to believe items subject to seizure would be present in the appellants' residences. The affidavit in this case is even less forthcoming with facts to support probable cause than the affidavit in *Beed v. State*, 271 Ark. 526, 609 S.W.2d 898 (1980). There, police sought to search Beed's residence for a ring taken from a victim during a rape, aggravated robbery, and kidnaping. The Arkansas Supreme Court concluded as follows:

> The affidavit was not sufficient, however, in that it failed to disclose how the reliable informant knew that the ring and the other property described in the warrant were in the house to be searched. It was merely recited that the informant had said Bennie Beed had resided at the described premises during the time he was being sought by the officers for these crimes and that the property described was hidden in the house. The statement of this conclusion without any statement of underlying circumstances from which the informant arrived at it was insufficient to meet the test for showing probable cause for the search.

271 Ark. at 535, 609 S.W.2d at 898.

The affidavit in the present case lacks even the conclusory statement found in Beed that the items subject to seizure could be found at appellants' residences. Because there were no facts whatsoever in the affidavit supporting probable cause to believe that items subject to seizure were present at appellants' residences, I believe the search warrant was improperly issued. *See also Tatum v. State, supra.*

The majority attempts to gloss over this glaring absence by concluding that "it was reasonable for the judge issuing the search warrant to infer that the evidence sought to be discovered would be found where appellants resided." However, the omission of any reference to appellants' residences is so complete that none can be inferred. The majority's flawed conclusion that such an "inference" is reasonable serves only to make a mockery of the requirement that

there be reasonable cause to believe that things subject to search will be found in a particular place. The majority concludes that because appellants are involved in drug activity, then there must be drug activity taking place at their residences. Certainly, the marijuana seen growing in the woods several miles from appellants' residences would not be found at the residences because the police confiscated all of it. What is missing in the majority's analysis is some objective fact contained in the affidavit establishing probable cause to believe that some evidence of drug activity could be found at appellants' residences. Also missing is any conclusion by the officers that, based on their experience, marijuana would likely be found in appellants' homes, despite their confiscation of all the plants they had seen days earlier. The affidavit does not provide either facts or informed conclusion, so the majority presupposes, without any basis in fact or in the record before us, that persons involved in controlled substances will have drugs at their residences.

It is also patently obvious that the ninth circuit cases relied on by the majority to support the propriety of their inference do not support their position. In *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986), the affidavit provided that a confidential informant had told police that the defendant was selling drugs (heroin and cocaine) from his residence. In *United States v. Terry*, 911 F.2d 272 (9th Cir. 1990), the affiant averred that, in his experience, persons involved in methamphetamine trafficking keep drugs, paraphernalia, records, and money at their residences. However, in *United States v. Pitts*, 6 F.3d 1366 (9th Cir. 1993), which purported to rely on both *Angulo-Lopez* and *Terry*, there was neither direct evidence nor an officer's opinion given connecting the drugs to the residence searched. In *Pitts*, the court found the affidavit, which described an ongoing FBI investigation involving past weekly sales of cocaine where Pitts was the distributor, and a recent sale of crack cocaine by Pitts to a witness at her home some four months earlier, to provide a "reasonable nexus" between Pitts's drug dealing and his home, where police subsequently found, among other things, a shotgun, marijuana, and a bag with a trace amount of white powder. It is not clear from this opinion whether the additional information provided by the witness that she had purchased shotguns for Pitts to use in his drug dealing and his arrest for possession of those guns some six months earlier was included in the affidavit for search warrant. Thus, in both *Angulo-Lopez* and *Terry* there was at least a

conclusory statement contained in the affidavit to support the belief that the drug activity was taking place at the residence to be searched; the subsequent case, *Pitts*, although purporting to rely on these precedents, clearly exceeded the bounds of both *Terry* and *Angulo-Lopez*.

Furthermore, these Ninth Circuit cases were soundly and properly criticized in *Washington v. Thein*, 138 Wash.2d 133, 977 P.2d 582 (1999), wherein the Washington Supreme Court held that generalizations made in an affidavit regarding the common habits of drug dealers were not, standing alone, sufficient to establish probable cause to search a person's residence, and that to support probable cause to search a person's residence, there must be facts establishing a link between a person's drug activity and a person's residence. The court further noted that there were even conflicts in the decisions of the Ninth Circuit Court of Appeals and that most courts require some nexus beyond an officer's general conclusions. In the case at bar, the affidavit does not even contain an officer's general conclusions. As the Washington Supreme Court concluded, "a finding of probable cause must be grounded in fact," facts which are sorely lacking in the affidavit but which the majority here presupposes for the State. Likewise, in *Beed*, the Arkansas Supreme Court established the need for more than conclusory statements. The affidavit in the case at bar, in stating that "[i]nformation and intelligence developed by different law enforcement agencies working within Arkansas County indicates that both Lee Cloud and Curtis Yancey have been involved, and continue to be involved, in the propagation, preparation, consumption and delivery of controlled substances, specifically marijuana," can only be characterized as conclusory.

The majority also cites favorably, but inexplicably, to several cases from other circuits; these authorities are even farther afield from the facts before us than *Terry* and *Pitts*. In *United States v. Feliz*, 182 F.3d 82 (1st Cir. 1999), there was a detailed and thorough affidavit supporting the warrant[1]; in *United States v. Lamon*, 930 F.2d

---

[1] [The agents'] search warrant affidavit contained a paragraph setting forth in detail his training and experience in the investigation of drug trafficking crimes. Agent Dumas stated he had been a law enforcement officer for approximately four years, and was sworn as a Special Agent of the Maine DEA in May, 1996. Agent Dumas further stated that "[f]rom my experience, education, training and/or study, I know it to be quite common for those involved in the illegal trafficking/furnishing of scheduled drugs to possess, maintain and keep

1183 (7th Cir. 1991), there was an affidavit that stated appellant had sold cocaine out of the house to be searched within the past seventy-two hours and had also sold drugs out of his automobile, along with the officer's statement that "based on his training and experience, he knew that illicit drug dealers often use their automobiles to deliver drugs to their customers and often store drugs and paraphernalia. . . in their automobiles." In *United States v. Malin*, 908 F.2d 163 (7th Cir. 1990)*(abrogated on other grounds)*, officers observed marijuana growing in the back yard of the house to be searched; the court ruled that this observation "reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in Malin's house."

Finally, the search cannot be saved by the application of *United States v. Leon*, 468 U.S. 897 (1984). In *Leon,* the Supreme Court stated that the good-faith exception does not apply in four instances, including the instance "where the officer's affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923. The Arkansas Supreme Court and this court have repeatedly refused to apply *Leon* when an affidavit provides only conclusory language, usually in cases involving nighttime searches. *See, e.g., Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146 (1999); *Richardson v. State,* 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State,* 307 Ark. 353, 820 S.W.2d 446 (1991); *State v. Martinez,* 306 Ark. 353, 811 S.W.2d 319 (1991); *Hall v. State,* 302 Ark. 341, 789 S.W.2d 456 (1990); *Langley v. State,* 66 Ark. App. 311, 990 S.W.2d 575 (1999);*Thompson v. State,* 42 Ark. App. 254, 856 S.W.2d 319 (1993); *Carpenter v. State,*

---

with, near them, and/or in their residences business records and journals relating to the trafficking and/or furnishing of scheduled drugs...." Agent Dumas continued: "In particular, I know that, where, as here, an individual is demonstrated to be trafficking in drugs, it is not uncommon for there to be evidence of their drug trafficking activities, such as drug records, telephone numbers of suppliers and customers, drug trafficking paraphernalia, drug proceed and/or evidence of transfer, expenditures or investment of drug proceeds kept at the trafficker's residence." Finally, with regard to sums of money in the possession of drug traffickers, Agent Dumas state that in his experience it was common for those involved in the illegal trafficking/furnishing of scheduled drugs to possess and keep with them, near them, and/or at their residences, sums of money...either as a result of scheduled drug sales or for the purpose of purchasing scheduled drugs or facilitating scheduled drugs sales with others. Because such moneys are not usually safely disposed of legitimately (e.g., deposited in a bank or declared as taxable income), it is common for those who traffick illegal scheduled drugs to keep these sums on their person or near the, in a safe location, frequently in their residences, and/or at/near their residences and/or near the same location where they keep their drugs, or maintain drug operations.

36 Ark. App. 211, 821 S.W.2d 51 (1991). Moreover, the majority even acknowledges that *Leon* requires that "sufficient evidence must be presented to allow a magistrate to determine probable cause; his action *cannot merely ratify the bare conclusions of others.*" (Emphasis added.) Thus, it follows that *Leon* should not apply when an affidavit lacks even conclusory language supporting the search. *Leon* does not and should not save the police from the complete and utter failure to state in their affidavit the reason why they believe items subject to seizure may be found in a particular place.

In my mind, this should be an easy case to reverse. The majority's conclusion is deeply disturbing in its breadth and scope. They have effectively eliminated the requirement that law enforcement agencies present facts to support a request for a search warrant to search a person's home. That decision does not bode well for any Arkansan. I dissent.

HART, J., joins.