§3E1.1, commentary, applic. note 1(a).  Having determined that Chavis was responsible for both handguns, the district court could reasonably conclude that Chavis "falsely denied" this relevant conduct, and had "acted in a manner inconsistent with acceptance of responsibility[.]"  Given the deference due to district court determinations concerning acceptance of responsibility, U.S.S.G. § 3E1.1, comment, applic. note 5, we cannot say that this conclusion was in error.  Even if acceptance of responsibility were considered in relation to each offense independently, therefore, Chavis would not be entitled to any reduction.  Consequently, we conclude that the district court did not err in denying Chavis's request for a two-level reduction based upon partial acceptance of responsibility.

### III.  CONCLUSION

Based upon the foregoing reasons, we **AFFIRM** the decision of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0245P (6th Cir.)
File Name:  02a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*                                                 No. 00-3791

JEREMY LEE CHAVIS,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00121—Algenon L. Marbley, District Judge.

Submitted:  April 24, 2002

Decided and Filed:  July 22, 2002

Before:  DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.[*]

_____

### COUNSEL

**ON BRIEF:**  Larry Wayne Thomas, THOMAS & DIXON, Columbus,  Ohio,  for  Appellant.    Michael  J.  Burns,

_____

[*]The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

—————————

**OPINION**

—————————

KAREN NELSON MOORE, Circuit Judge. The defendant, Jeremy Chavis, appeals his conviction and sentence for one count of causing another person to make false statements to a federally licensed firearms dealer and one count of simple possession of in excess of five grams of cocaine base. On appeal, Chavis contends: (1) that the evidence was insufficient to support the jury's verdict of guilt as to the drug offense, (2) that the district court erred in denying his motion to sever the two counts of conviction pursuant to Federal Rule of Criminal Procedure 8(a), (3) that the district court erred in determining Chavis's relevant conduct for the purposes of sentencing, and (4) that the district court erred in refusing to apply a downward adjustment to Chavis's sentence for his partial acceptance of responsibility for the firearms charge. For the reasons discussed below, we **AFFIRM** the decision of the district court.

## I. FACTS AND PROCEDURE

On August 19, 1999, a federal grand jury returned a two-count indictment against the defendant, Jeremy Chavis. Count One charged Chavis with causing another person to make a false statement to a federally licensed firearms dealer on or about September 13, 1997, in violation of 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(1)(B), and 18 U.S.C. § 2. Count Two charged Chavis with unlawfully possessing in excess of five grams of cocaine base with the intent to distribute on or about June 9, 1999, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii).

On October 7, 1999, Chavis filed a motion pursuant to Federal Rule of Criminal Procedure 8(a) to sever the counts

the handgun, nor did he accept responsibility for the amount of cocaine." J.A. at 124-25 (Sentencing Tr. at 16-17).

Normally, Chavis's denial of the crack cocaine charge alone would render him ineligible for acceptance of responsibility credit. We have previously held that "a defendant must accept responsibility for all counts before he is entitled to a reduction in sentence for acceptance of responsibility." *United States v. Chambers*, 195 F.3d 274, 278 (6th Cir. 1999). "This conclusion is directly supported by the Sentencing Guidelines, as U.S.S.G. § 1B1.1 directs courts to group convictions prior to applying an adjustment for acceptance of responsibility." *Id.* at 278-79. This rule does not apply in the instant case, however, since the counts of conviction were improperly joined. We think Chavis should not be held to a higher standard than he would have been had the two crimes been properly severed. Because the joint trial of the two offenses was improper, therefore, Chavis was not obliged to accept responsibility for both offenses in order to qualify for the adjustment.

Nevertheless, we conclude that the district court did not err in denying Chavis's motion, since the court properly determined that Chavis had not accepted responsibility for *either* offense. The district court's explanation for its denial of Chavis's motion makes clear that the court did not believe Chavis had accepted responsibility for the handgun offense. Instead, Chavis attempted to "parse . . . out" his guilt as to the handgun offense by admitting responsibility for only one of the two handguns, and denying responsibility for the handgun purchased by Langbein. Chavis's denial of responsibility, as relevant conduct, for the second handgun is a valid ground for denying an acceptance of responsibility adjustment. Under the Sentencing Guidelines, "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction [for acceptance of responsibility,]. . . . However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility[.]" U.S.S.G.

U.S.S.G. § 1B1.3(a)(1). Whether the criminal acts of others in a jointly undertaken criminal activity are reasonably foreseeable is a question of fact, reviewable only for clear error. *See United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1584 (2002).

The district court's conclusion that the purchase of both handguns was reasonably foreseeable was not clear error. Trial testimony established that Chavis and Langbein jointly approached Chmielewski about purchasing the handguns and traveled to the gun store on two occasions together with Chmielewski. Both handguns were purchased at the same time. This evidence is sufficient to support the conclusion that Chavis and Langbein acted jointly in causing Chmielewski to make false statements to a federally licensed firearms dealer and that Langbein's purchase was reasonably foreseeable to Chavis.

### 2. Acceptance of Responsibility

Chavis argues that the district court erred in refusing to award a downward adjustment for acceptance of responsibility based upon Chavis's admission to his involvement in the illegal firearms purchase. Section 3E1.1(a) of the Sentencing Guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels." U.S.S.G. § 3E1.1(a). The commentary to § 3E1.1 explains that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment, applic. note 5. Chavis requested an acceptance of responsibility adjustment during his sentencing hearing. The district court overruled Chavis's motion, explaining that "it is my understanding of the case law that there has to be an acceptance of responsibility for all of the acts. You can't parse it out. And I think that is what Mr. Chavis was attempting to do. I don't think he accepted responsibility for

in the indictment. Oral argument was held on the motion on October 25, 1999. The court denied the motion at that time,[1] and the case proceeded to a consolidated trial on both counts.

At Chavis's trial, Lorrie Chmielewski testified that Chavis and Donald Langbein, Chavis's cousin, asked her to purchase firearms for them in September of 1997. Chavis, who was only eighteen years old at the time, was not old enough to purchase a handgun. Chavis requested that Chmielewski purchase the guns and fill out the necessary background check because she was over twenty-one years old and did not have any felony convictions.

According to Chmielewski, on September 6, 1997, Chavis drove to a gun store in Columbus with Chmielewski, Langbein, and Chavis's girlfriend. Chmielewski testified that Chavis supplied her with some crack cocaine before driving to the gun store. At the store, Chavis and Langbein picked out the guns that they wanted. Chmielewski filled out the required background-check form, using her own name, date of birth, address, and social security number. Chmielewski also paid a deposit for the guns with money supplied by Chavis and Langbein. Chmielewski told the sales person at the store that she was buying the guns for herself. She was given a receipt for the guns, which she gave to Chavis.

After the background check was completed, Chmielewski returned to the gun store with Chavis, Langbein, and Chavis's uncle. Chmielewski filled out a Firearms Transaction Record at that time, on which Chmielewski affirmed that she was the actual buyer of the guns. Chmielewski carried the guns out of the store and gave them to Chavis and Langbein upon arriving at Chavis's grandmother's house. Chmielewski stated that

---

[1] In preparation for appeal, counsel were unable either to obtain a transcript of the hearing or to locate a written order on the record denying Chavis's motion. On August 16, 2001, the district court entered an order explaining that it had considered the motion but denied it due to the defendant's failure to show prejudice.

she received a quantity of crack cocaine from Langbein at that time in exchange for her services.

Nearly two years later, on June 9, 1999, Columbus Police Officer Jeremy Ehrenborg was conducting a bicycle patrol of a public housing complex in Columbus. During his patrol, Ehrenborg saw Chavis standing behind a short brick wall. According to Officer Ehrenborg, he was not looking for Chavis on that night. Ehrenborg testified that when Chavis noticed him approaching, Chavis threw his arms back and dropped a small bag. Ehrenborg testified that he immediately went to pick up the bag, which he found about ten feet from Chavis, and noticed that it contained a substance resembling crack cocaine.

At Chavis's trial, Heather Crock, a criminologist at the Columbus police crime laboratory, testified regarding her examination of the substance recovered during the arrest. Crock stated that the substance was crack cocaine and that it weighed 5.1 grams at the time she examined it. At the time of trial, however, the substance weighed only 4.13 grams. Crock testified that such a loss of weight over time was not abnormal. She stated that weight loss could be attributed to evaporation of water contained in the substance. Crock also testified that a small portion of the material was destroyed as a result of testing. Special Agent Daniel Ozbolt, of the Federal Bureau of Alcohol, Tobacco, and Firearms, testified at Chavis's trial that a quantity of 5.1 grams suggested that the crack was intended for distribution, rather than personal use.

Chavis testified in his own defense. He admitted to asking Chmielewski illegally to purchase a handgun for him. Chavis denied supplying Chmielewski with any crack cocaine, however. He testified that he gave Chmielewski only the money for the gun and that it was Langbein who gave her the crack cocaine. Chavis also denied possessing a bag of crack cocaine at the time of his arrest by Officer Ehrenborg. Chavis stated that the area where he was arrested was located near a house where crack cocaine was sold, and that people selling

entitled to a two-level downward adjustment in his offense level for partial acceptance of responsibility for the firearms offense. In reviewing a district court's application of the Sentencing Guidelines, this court reviews conclusions of law de novo and reviews findings of fact for clear error. *See United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997).

### 1. Relevant Conduct

Chavis argues that the district court should not have considered both handguns purchased by Chmielewski as part of his relevant conduct. Chavis argues that he purchased only one handgun for himself, and that Langbein acted independently in purchasing the other handgun. The district court overruled this objection on the grounds that the purchase of both handguns was a reasonably foreseeable result of Chavis's and Langbein's jointly undertaken criminal activity.

The Sentencing Guidelines provide that relevant conduct, for the purpose of determining the defendant's offense level, includes:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

*Lane*, we assume that the jury followed the judge's instruction and did not use evidence relating to the firearms charge to infer guilt as to the drug crime. Moreover, there is little basis in the record for concluding that the jury would not have convicted Chavis on the firearms charge in the absence of his testimony, given the strength of the government's case.

## C.  Sentencing Issues

Chavis objects to the sentence imposed by the district court. The defendant argues, first, that the district court erred in determining that both handguns purchased by Chmielewski in September of 1997 should be considered as part of Chavis's relevant conduct. The defendant also contends that he was

---

been tried separately, however, he would have faced the possibility of receiving consecutive, rather than concurrent, sentences for the two offenses, exposing him to a much more severe punishment. *See United States v. Flowers*, 995 F.2d 315, 318 (1st Cir. 1993) ("[W]hen a prosecutor charges two crimes in a single indictment, the 'multiple count' rules may produce a different sentence than the sum of the two sentences that the Guidelines would have produced had the prosecutor charged the two crimes in two totally separate indictments."). Because the two offenses were included as multiple counts in the same indictment, Chavis received the benefit of the Sentencing Guidelines' rules prescribing that the sentences for multiple counts of conviction run concurrently. *See* U.S.S.G. § 5G1.2(c). True, it would be possible for Chavis to receive completely concurrent sentences for the drug and firearms offenses even if the two were tried separately, since the district court has some discretion to impose either concurrent or consecutive sentences where "[m]ultiple terms of imprisonment [are] imposed at different times." 18 U.S.C. § 3584(a); *see also United States v. Maney*, 226 F.3d 660, 665 (6th Cir. 2000) ("A district court has discretion to impose a concurrent or consecutive term of imprisonment on a defendant who is already subject to an undischarged term of imprisonment."); U.S.S.G. § 5G1.3(c). We note, however, that the statutory default in such situations is that the sentences run consecutively. 18 U.S.C. § 3584(a). We do not perceive anything about Chavis's case that would clearly warrant departure from the default rule. *See generally* 18 U.S.C. §§ 3553(a), 3584(b) (listing factors to be considered in imposition of sentence). We therefore cannot conclude that misjoinder adversely affected Chavis's substantial rights at sentencing, since all indications suggest that Chavis received a lesser sentence than he would have received had the two offenses been tried separately.

or purchasing drugs frequently walk through the area where he was standing that night.

Judith Griffith also testified for the defense. She stated that she was standing with Chavis on the night he was arrested by Officer Ehrenborg. Griffith stated that there were several other people in the same general area. According to Griffith, the police searched the area with a flashlight after handcuffing Chavis and placing him in a police car. Griffith testified that the police found the bag of crack cocaine on the ground some distance from where she and Chavis had been standing.

Chavis made a Rule 29 motion for a judgment of acquittal at the close of the state's case, and renewed the motion at the close of all the evidence. On both occasions, the motion was denied. Chavis also requested an instruction on the lesser included offense of simple possession of five grams of crack cocaine. Chavis did not renew his motion to sever the counts at the conclusion of the evidence. The jury found Chavis guilty of the firearms count and simple possession of in excess of five grams of cocaine base. Chavis was acquitted of possessing crack cocaine with the intent to distribute.

At sentencing, Chavis argued that his offense level should be based only on the handgun he purchased for himself and not the handgun purchased by Langbein. The court overruled this objection, concluding that both handgun purchases were reasonably foreseeable results of Chavis's and Langbein's jointly undertaken criminal activity. Chavis also argued that he should receive a downward adjustment for acceptance of responsibility. The court overruled this objection because, although Chavis admitted to his participation in illegally purchasing a handgun, he denied possessing crack cocaine and denied his responsibility for one of the handguns. The court then determined that Chavis's total offense level should be set at twenty-seven, and that his criminal history category was III. Based upon this determination, the court sentenced Chavis to eighty-seven months' imprisonment. Chavis filed a timely notice of appeal.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Chavis first contends that the evidence at trial was insufficient to support the jury's verdict that he possessed in excess of five grams of crack cocaine. Chavis argues that a jury could not have found a quantity of more than five grams in light of the fact that the cocaine base weighed only 4.13 grams at the time of trial. Chavis also claims that the testimony of Crock was too inconsistent and speculative to support the jury's verdict.

"This court will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole . . . ." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (quotation omitted). The Supreme Court has explained that a jury verdict must be upheld if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "In addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir.), *cert. denied*, 513 U.S. 900 (1994). This standard places a "very heavy burden" upon a defendant making a sufficiency of the evidence challenge. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

Applying this standard, we conclude that there was sufficient evidence to convict Chavis of possessing in excess of five grams of cocaine base. Crock testified that she weighed the cocaine base found by Officer Ehrenborg and determined its weight to be 5.1 grams at the time of her analysis. Crock stated that she believed that measurement to be accurate to a reasonable scientific certainty. She also testified that it was not unusual for cocaine base to lose weight over time as a result of evaporation, and that a

firearms charge and still testified in his own defense as to the crack cocaine charge.

The *Lane* decision requires that we determine what impact Chavis's decision to testify had on the jury's verdict on the firearms charge. 474 U.S. at 449. This is a difficult inquiry, since the issue was not fully litigated in the district court as a result of Chavis's admission of guilt. Nevertheless, we conclude that Chavis was not prejudiced. The evidence of Chavis's guilt on this charge was overwhelming. *See id.*; *Frost*, 125 F.3d at 390 (citing overwhelming evidence of guilt as to count of conviction as primary grounds for concluding that any error resulting from misjoinder was harmless). Chavis was directly implicated by Chmielewski in the crime, and two employees at the gun store identified Chavis as having been with Chmielewski when she purchased the handguns. In contrast, there is no evidence in the record to dispute Chavis's guilt. Although we understand that this is due partly to Chavis's decision not to contest guilt at trial, we think Chavis could have made a proffer of proof concerning any possible defense to the firearms charge in support of his Rule 8(a) motion. Given Chavis's admission of guilt, it is difficult to imagine that any significant exculpatory evidence could have been presented or any weakness in the government's case exposed. In light of the overwhelming evidence presented by the government on the firearms charge and Chavis's failure to make any proffer of evidence which might have afforded a defense, we discern little basis for finding prejudice.

Based upon the foregoing considerations, we determine that although it was error for the district court to deny Chavis's motion, any error resulting from misjoinder in the instant case was harmless.[2] In light of the Supreme Court's decision in

---

[2] We also determine that Chavis was not prejudiced at sentencing by the error in joinder. We acknowledge that Chavis received a one-level upward adjustment in his offense level based upon his conviction for multiple offenses. *See* UNITED STATES SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 3D1.4; J.A. at 191 (Presentence Report at 7). Had Chavis

The defendant has been charged with more than one crime. The number of charges is in no way evidence of guilt . . . . [I]t is your duty to consider separately . . . the evidence that relates to each charge and to return a separate verdict for each one. For each charge, you must decide whether the government has presented proof beyond a reasonable doubt . . . . Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges.

J.A. at 176. *Lane* instructs that we should presume that the jury followed this instruction and did not make an improper propensity inference. We think, therefore, that the district court's instruction significantly reduced the potential for prejudice to the defendant. The fact that the jury did not convict Chavis of possessing crack cocaine with an intent to distribute, moreover, offers further support for the conclusion that they did not label Chavis as a "drug dealer" based upon his involvement in the handgun purchase. *Cf. Frost*, 125 F.3d at 390 (noting that jury was not likely to have been prejudiced by evidence relating to destruction of evidence in light of jury's verdict acquitting the defendant on that charge); *United States v. Bibby*, 752 F.2d 1116, 1122 (6th Cir. 1985) (citing acquittal on misjoined charges as evidence that defendant was not prejudiced by joinder), *cert. denied*, 475 U.S. 1010 (1986); *Hubbard*, 61 F.3d at 1272 ("[T]he fact that the jury convicted Hubbard on the weapons offense but could not reach a verdict on the two narcotics charges suggests, if anything, that the jury was quite able to separate the firearms count from the narcotics counts and deliberate each with the appropriate evidence and legal criteria in mind.").

Chavis also points to a second type of prejudice resulting from joinder in this case. Chavis testified in his own defense as to the crack cocaine charge. By taking the stand, he was unable to exercise his privilege not to testify as to the firearms charge, to which he ultimately admitted guilt. Had the defendant been tried for the two offenses separately, Chavis argues, he could have put the government to its burden on the

reduction in weight from 5.1 grams to 4.13 grams was possible. The jury was entitled to believe this testimony and conclude that, at the time of his arrest, Chavis was in possession of in excess of five grams of cocaine base.

Chavis also argues that there was insufficient evidence of his intent to distribute. The district court conceded that the question was close, but ultimately denied the motion citing the quantity of crack, as well as the fact that the defendant was found in possession of $95 cash, a cell phone and a pager. We agree that this is a close case, but conclude that he district court ruling was not in error. A reasonable jury could have accepted Agent Ozbolt's testimony indicating that five grams of crack cocaine was consistent with a street dealer quantity and that a "user" would generally be in possession of only $20 rocks weighing about one tenth of a gram each. In combination with the defendant's possession of the cash and the cell phone and pager, a jury could have found intent to distribute. *See United States v. Peters*, 15 F.3d 540, 544-45 (6th Cir.) (finding sufficient evidence of intent to distribute where police found five grams of crack cocaine, $900, and a digital pager where "[e]xpert testimony indicated that the amount of drugs, the currency denominations, and the presence of a pager were consistent with drug distribution"), *cert. denied*, 513 U.S. 883 (1994); *see also United States v. Vincent*, 20 F.3d 229, 233 (6th Cir. 1994) (observing that intent to distribute can be inferred from quantity of drugs involved).

## B.  Improper Joinder

Chavis appeals the district court's denial of his motion to sever the two counts alleged in the indictment based upon misjoinder of offenses. Defendant's motion to sever alleged that joinder of the firearm and crack cocaine charges in the indictment did not satisfy the requirements of Federal Rule of Criminal Procedure 8(a), because the two offenses were not similar in nature, they were not part of the same transaction, and they were not part of the same scheme or plan. The district court denied Chavis's motion. In the district court's

order explaining its reasons for denial of severance, the court concluded that the defendant had not shown a risk of jury confusion or prejudice. The court further noted that "both the gun charge and the cocaine charge were drug related, although the offenses were separated by a two-year period." Joint Appendix ("J.A.") at 34.

Federal Rule of Criminal Procedure 8(a) sets forth the conditions under which multiple offenses may be joined in a single indictment. The Rule states:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

FED. R. CRIM. P. 8(a). Although this court has held that Rule 8 "should be construed in favor of joinder, it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law." *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982) (citations omitted). If joinder of multiple defendants or multiple offenses does not comply with the requirements of Rule 8, the district court has "no discretion on the question of severance." *Id.* at 441; *see also* CHARLES ALAN WRIGHT, 1A FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 145, at 89-90 (3d ed. 1999) ("Misjoinder of offenses or defendants . . . . raises only a question of law. If there has been misjoinder, the trial court has no discretion to deny the motion."). Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment. *See United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997), *cert. denied*, 525 U.S. 810 (1998); *United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993), *cert. denied*, 511 U.S. 1043, 511 U.S. 1146, 513 U.S. 883 (1994); *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995), *cert. denied*, 516 U.S. 1175 (1996); *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990).

can be reduced significantly by proper curative instructions. *See Lane*, 474 U.S. at 450 n.13. In *Lane*, the Supreme Court emphasized the value of limiting instructions in minimizing the risk of "spillover" prejudice from improper joinder of multiple defendants under Rule 8(b), explaining that

> [w]hen there are few defendants and the trial court is aware of the potential for prejudice, the risk of transference of guilt over the border of admissibility may be reduced to the minimum by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently. We cannot necessarily assume that the jury misunderstood or disobeyed such instructions. Indeed, this Court's conclusion in *Schaffer* that defendants failed to show prejudice was based directly on the fact that the judge was acutely aware of the possibility of prejudice and was strict in his charge — not only as to the testimony the jury was not to consider, but also as to that evidence which was available in the consideration of the guilt of each defendant separately under the respective substantive counts.
>
> The same caution was exercised by the trial judge here, and no different result should be required.

474 U.S. at 450 n.13 (quotations and brackets omitted). We have previously held that limiting instructions can similarly minimize the danger of prejudice resulting from improper joinder of offenses under Rule 8(a), particularly where "it would not have been difficult for the jury to compartmentalize and distinguish the evidence concerning" the different offenses charged. *Frost*, 125 F.3d at 391 ("The District Court further minimized any prejudice by instructing the jury to consider only the evidence against each defendant on each charge . . . without regard to the other charges or defendants.").

In the instant case, the court provided the following instruction concerning the relationship between the two counts:

case, including the overwhelming evidence of guilt, the fact that limiting instructions were given to the jury, and the fact that evidence concerning the misjoined counts would have been admissible in separate trials absent joinder. *Id.* at 450. The burden of persuasion in demonstrating that an error is harmless under Rule 52(a) rests with the government. *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994).

Chavis argues that permitting the jury to hear evidence about both the firearms charge and the drug charge created a risk that the jury would infer his guilt on the drug charge from his admission to the firearms offense or cumulate the evidence of both offenses rather than consider each one separately. The government arguably compounded this risk by introducing evidence that the handgun selected by Chavis was a variety that "drug dealers like." J.A. at 108 (Ozbolt Tr. at 139). We acknowledge that such evidence presents a danger that the jury might infer from Chavis's admitted involvement in the handgun purchase that he was a drug dealer, and therefore that Chavis was likely to be in knowing possession of crack cocaine. The Ninth Circuit in *Terry*, 911 F.2d at 277, recognized that the potential for this kind of prejudice exists whenever unrelated drug and firearms charges are improperly joined:

> A juror would inevitably be more disturbed about the idea of a "drug dealer" with a gun than a citizen who previously had committed some unknown crime. It is highly probable that this inculpatory characterization of Terry as a drug dealer influenced the jury in determining its verdict.

*Id.* In addition, joinder of the drug and firearms charges allowed the jury to hear Chmielewski's testimony that Chavis supplied her with a quantity of crack cocaine in exchange for her assistance with the handgun purchase, which also carries the risk that the jury would improperly infer that Chavis was predisposed to commit drug offenses.

The Supreme Court has instructed, however, that the danger of prejudice resulting from improper propensity inferences

### 1. Waiver

As an initial matter, the government argues that this court is precluded from reviewing the district court's denial of Chavis's severance motion, because the motion was not renewed at the close of all the evidence. The government bases this argument upon our precedent holding that a motion to sever counts in an indictment under Rule 14 "will be deemed waived if it is not renewed at the end of the evidence." *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987). Rule 14, however, is addressed to different situations than Rule 8. Rule 14 authorizes a defendant to move for severance in situations in which joinder of multiple offenses or defendants is proper under Rule 8, but nonetheless would be prejudicial to the defendant. *See Zafiro v. United States*, 506 U.S. 534, 538 (1993) ("Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government."); *Schaffer v. United States*, 362 U.S. 511, 514 (1960). Chavis made a motion for relief under Rule 8(a), not Rule 14, asserting that initial joinder of the two offenses in the indictment was improper. As the Ninth Circuit observed in *Terry*, although "it is clear that a Rule 14 motion to sever must be renewed at the close of the evidence or it is waived, there is no such requirement for a Rule 8 motion." 911 F.2d at 277. The *Terry* court explained the reason for this distinction:

> The rationale behind the renewal requirement in the Rule 14 context is inapplicable to Rule 8. A Rule 14 motion must be renewed in order to allow the trial court to assess whether the joinder was prejudicial and to prevent a defendant from deliberately failing to make a meritorious motion and waiting to see what verdict the jury returns.
> A Rule 8 motion, in contrast to Rule 14, disputes the propriety of joining charges in the indictment. Rather than being decided at the discretion of the lower court judge it permits joinder only under certain specific circumstances. With Rule 8, unlike Rule 14, it is not necessary for the trial court to assess whether a joinder is

prejudicial at a time when the evidence is fully developed, the parties are best prepared and the witnesses' recollections freshest . . . . Because the propriety of a Rule 8 joinder is determined solely by the initial allegations of the indictment, there is no need to assess what actually happened in the trial.

*Id.* (quotation and citations omitted). Although this circuit has never expressly ruled on this issue, we have previously cited the above-quoted discussion in *Terry* with approval when explaining the rationale for the renewal requirement under Rule 14. *See United States v. Allen*, 160 F.3d 1096, 1106 (6th Cir. 1998), *cert. denied*, 526 U.S. 1044 (1999); *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir.), *cert. denied*, 516 U.S. 890, 952 (1995). We likewise find persuasive the *Terry* court's conclusion that the reasons for the Rule 14 renewal requirement do not apply to motions alleging that initial joinder was improper under Rule 8. Consequently, we conclude that appellate review of the joinder issue is proper at this time, notwithstanding the fact that Chavis did not renew his Rule 8(a) motion at the conclusion of the evidence.

## 2. Propriety of Joinder

We conclude that the joinder of the drug and firearms offenses in the instant case was not proper. There is no evidence or allegation in the indictment suggesting that Chavis's possession of cocaine base in June of 1999 was part of "the same act or transaction" as the purchase of the handgun in September of 1997 or that the two offenses were otherwise "connected together or constituting parts of a common scheme or plan." FED. R. CRIM. P. 8(a). There is no indication in the indictment or elsewhere in the record that Chavis possessed or used any weapons, including the handguns cited in Count One, in connection with his possession of cocaine base in June of 1999. Nor is there a common thread of an overarching criminal scheme connecting these two crimes. The indictment did not allege that Chavis's illegal acquisition of the firearms was related to

in assessing the propriety of joinder. *Swift*, 809 F.2d at 322. As one commentator has noted, "[i]f the offenses arise out of separate and unrelated transactions, there is likely to be little saving in time and money in having a single trial." WRIGHT, *supra*, § 143, at 40. In the instant case, there is no overlap in the proof required to prove the two offenses, and they do not spring from the same series of events or factual background. *See Swift*, 809 F.2d at 322; *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978) (noting that advantages of joinder "largely disappear" where there is no common factual basis for two offenses).

*United States v. Reynolds*, 489 F.2d 4, 6 (6th Cir. 1973), *cert. denied*, 416 U.S. 988 (1974), upon which the government and the district court decision rely, is not to the contrary. In *Reynolds*, the court found that no prejudice could result from the joinder of two sets of unrelated drug counts where the defendant was named in each count and evidence was presented as to each. *Id.* In *Reynolds*, however, all four counts involved illegal possession and sale of narcotics. *Id.* Thus, *Reynolds* presented a case of joinder of offenses that are "of the same or similar character" but unrelated, which is explicitly permitted under Rule 8(a). The instant case is inapposite, however, because the two counts of the indictment were both dissimilar and unrelated to each other.

## 3. Harmless Error Analysis

Determining that joinder was improper does not end our inquiry. Review of errors involving misjoinder is subject to the harmless error provision of Federal Rule of Criminal Procedure 52(a), which permits reversal only for trial errors that "affect substantial rights." *See United States v. Lane*, 474 U.S. 438, 449 (1986). "[A]n error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quotation omitted). Applying this standard, the Supreme Court in *Lane* identified a number of factors which showed that misjoinder was harmless in that

[with] cocaine," under theory that they were connected acts or transactions).

In the instant case, there is some evidence that the purchase of the firearms was related to drug activity, since Chmielewski received crack cocaine for her assistance in purchasing the handguns. At best, however, the government can show that the firearms were "connected" or part of a "common plan" with some uncharged drug activity that occurred two years before the June 1999 arrest. This does not show that the *two offenses charged in the indictment* — i.e., the purchase of the firearm and the defendant's possession of narcotics in 1999 — were "connected together" for the purposes of Rule 8(a). The nearly two-year gap in time which separates the two charges strongly refutes any inference of such a connection. Nor does the fact that crack cocaine was present at the time of the firearms offense transform the illegal purchase of a firearm into an offense "of the same or similar character" to possession of crack cocaine. As the Seventh Circuit noted in *Hubbard*:

> The unlawful possession of a firearm . . . is not, in other words, a crime "of the same or similar character" to narcotics trafficking for purposes of Rule 8(a). True, the two do often occur hand in hand, and in that sense they might be deemed "connected together" or "parts of a common scheme or plan" given a temporal nexus between them. But when nearly a year and a half transpires between the distribution of narcotics and the possession of a firearm, something more must tie the two offenses together to permit joinder in a single indictment.

61 F.3d at 1270-71 (citations omitted). In addition, the facts relating to the exchange of crack cocaine for Chmielewski's false statements are not found anywhere in the indictment, which is the relevant place to look when assessing the propriety of joinder under Rule 8(a). *See id.* at 1270.

Moreover, joinder of the two offenses in the instant case offered minimal advantages in terms of judicial efficiency, which we have identified as "the predominant consideration"

drug activity in any way, "and it is the face of the indictment on which we must focus in deciding whether the charges were properly joined." *Hubbard*, 61 F.3d at 1270. The lack of any relationship between the two counts in the indictment is further demonstrated by the significant gap in time — nearly two years — that occurred between the offense conduct underlying Count One and that underlying Count Two. *Id.* at 1271. Therefore, the government's case for joinder depends upon whether the two offenses were of the "same or similar character." FED. R. CRIM. P. 8(a).

We conclude that the firearms charge was not of the "same or similar character" as the crack cocaine charge. As the Seventh Circuit has noted, "[t]he unlawful possession of a firearm is . . . an offense wholly distinct from the distribution of narcotics, established on proof of elements unique to that offense." *Hubbard*, 61 F.3d at 1270-71; *see also Terry*, 911 F.2d at 276. Likewise, causing someone to make false statements to a federally licensed firearms dealer is an entirely distinct offense from possessing with intent to distribute crack cocaine. Although drugs and guns are frequently connected in particular criminal activities, which would permit joinder under the "the same act or transaction" or the "common scheme or plan" prongs of Rule 8(a), in the abstract illegally purchasing a firearm does not necessarily involve drug activity.

Other courts have found misjoinder under circumstances substantially similar to those presented here. In *Hubbard*, the defendant was convicted after a consolidated trial on charges of being a felon in possession of a handgun and narcotics trafficking. The evidence showed that the defendant had conducted narcotics transactions in his automobile and had stored the narcotics in a particular compartment in the vehicle. *Id.* at 1265. He was arrested nearly a year and a half after the drug transactions. At the time of his arrest, the police found a firearm in the compartment in his vehicle that had been used to store the narcotics. A drug dog alerted to the compartment, but no drugs were found. *Id.* at 1266. The government defended joinder on the grounds that the two

charges were either "connected together" or were of a "similar character." *Id.* at 1270. The court rejected both arguments. The court noted that joinder is frequently permitted when firearms are discovered along with evidence of drug trafficking "due to the natural inferences that may be drawn from the contemporaneous possession of guns and drugs . . . : the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun." *Id.* The court found these cases distinguishable from the defendant's case, however, due to the fact that "a significant expanse of time separate[d] the discovery of the firearms from the conduct underlying the narcotics charges." *Id.* The court noted that there was no connection alleged between the two crimes in the indictment. Moreover, the court found that the presence of the gun in the compartment allegedly used to store drugs at an earlier date did not supply an adequate connection between the offenses because "without something else, it links the two charges . . . no more closely than *any* two crimes committed in the same residence or the same vehicle." *Id.* at 1271. Finally, the court noted that, although there was some evidentiary overlap regarding the compartment, such overlap was not evident on the face of the indictment. *Id.*

Similarly, in *Terry*, the Ninth Circuit found improper joinder of charges of narcotics possession and being a felon in possession of a firearm, where narcotics were found in the defendant's vehicle forty miles away from his home and a search of the defendant's home thirteen days later uncovered a shotgun but no evidence of drug activity. 911 F.2d at 274. The court noted that no connection between the gun and the drugs was alleged in the indictment and there was no overlap in the evidence needed to prove the two offenses. *Id.* at 276. The court distinguished cases permitting joinder of firearms and narcotics offenses on the grounds that "[a]ll the cases cited by the government . . . either involve firearms found in defendants' possession at the time of their arrests, or guns and ammunition found during the same search or arrest which uncovered the drugs." *Id.* at 276 n.2.

The government argues, however, that because guns are tools of the drug trade, and because there is evidence linking the firearms purchase with drug activity, there is a sufficient connection between the two offenses to permit joinder. The "tools of the trade" argument generally permits joinder only when the firearms charges and the drug charges are "sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan," as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search. *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987); *see also, e.g., United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (approving joinder where indictment alleged that drugs were used to finance weapons purchases, defendant was charged with possessing firearm in connection with narcotics, and testimony showed offenses occurred in same time frame), *cert. denied*, --S. Ct.--, 2002 WL 459022; *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) (finding no misjoinder where indictment charged felon in possession offense as well as possession of the same firearms in connection with drug crime). In such circumstances, the possession of a firearm can be characterized as part of "the same act or transaction" or as an act "constituting part[] of a common scheme or plan" as the narcotics crime, because the firearm is an instrument used to accomplish narcotics trafficking. *See, e.g., United States v. Price*, 265 F.3d 1097, 1105 (10th Cir. 2001) (affirming joinder "under the theory that the firearms and the drugs were being used in pursuit of a common unlawful activity" (quotation omitted)); *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000) ("Because weapons are tools of the trade of drug dealers, and all of the violations . . . occurred at the same . . . place, and clearly constituted 'a series of acts,' we agree that [the defendant's] counts were properly joined . . . ." (quotations and citations omitted)); *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) (finding proper joinder where "evidence showed, *inter alia*, that [defendant] was selling both commodities [drugs and guns] to the same customers" and "on at least one occasion he sought to pay for guns . . .