File Name: 06a0723n.06

Filed: October 4, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-6061

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                                                          ON APPEAL FROM THE
                                                                              UNITED STATES DISTRICT
BRIAN K. HERRON,                                          COURT FOR THE WESTERN
                                                                              DISTRICT OF KENTUCKY

    Defendant-Appellant.

_____/

Before:        MARTIN and RYAN, Circuit Judges; and MARBLEY, District Judge.[*]

        BOYCE F. MARTIN, JR., Circuit Judge.  On March 15, 2005, Brian Herron was convicted by a jury of one count of attempted bank robbery, 18 U.S.C. § 2113(a), two counts of armed bank robbery, 18 U.S.C. § 2113(d), two counts of brandishing a firearm during the robberies, 18 U.S.C. § 924(c)(1)(A)(ii), one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), one count of escape, 18 U.S.C. § 751(a), three counts of assaulting a federal officer, 18 U.S.C. § 111(b), and two counts of assaulting a person assisting a federal officer, 18 U.S.C. § 111(b).  Herron was then sentenced to 420 months in prison.  Herron now appeals his conviction and sentence on a number of grounds.  For the foregoing reasons, we affirm the decisions of the district court.

_____

        [*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

On December 23, 2002, Herron entered a US Bank in Owensboro, Kentucky. He approached the teller and handed her a note stating that he had a gun, to hand over money, and not to activate any alarms. The teller asked to see the gun and Herron told her it was a Christmas joke and left the bank. On December 26, a white male entered the BB&T Bank in Whitesville, Kentucky and held a teller at gun point, while they filled a blue bank bag with approximately $2,400. On January 3, 2003, a white male entered the same US Bank that Herron entered on December 23 and again held a teller at gun point while having a blue bank bag filled with approximately $1,400.

Herron testified at trial that he was the man who attempted to rob the US Bank on December 23. He made no such admissions as to the second and third alleged robberies.

On January 7, the police were contacted by Gerald "Jerry" Morris, who told the officers that Herron had admitted to being involved in all three incidents. Herron was arrested and the police searched the residence in which Herron and Morris lived. In the residence, the police found a firearm, a blue bank bag, and clothing matching the description of that worn by the robber during all three bank robberies (grey sweatpants and a blue jacket). On February 5, a six-count indictment was brought against Herron.

While in federal custody, Herron was transferred to a federal medical facility in Lexington, Kentucky. On July 17, 2004, Herron escaped from the medical facility.[1] Herron was spotted shortly

---

[1]Allegedly, Herron escaped by climbing out of a window fifteen feet above the ground, heading towards the roof. Once on the roof, Herron tied two fire hoses together and used the make-shift rope to rappel five stories down the side of the building, then jumped over the razor wire surrounding the facility.

after his escape in Owensboro, Kentucky. A car carrying three Federal Bureau of Investigation agents and two local officers attempted to stop Herron's vehicle. Herron then ran his vehicle into the officers's vehicle in an attempt to flee. His attempt was unsuccessful and Herron was apprehended in Owensboro.

On August 4, the government obtained a thirteen-count indictment, adding charges for Herron's escape. Leading up to trial, Herron attempted to sever charges into two separate trials – one for the bank robberies and a separate trial for the escape charges – but the district court denied all of his motions. Herron also filed a motion to suppress which was denied by the district court. On March 15, 2005, Herron was found guilty on all of the bank robbery, firearm, escape, and assault counts. The jury did find Herron not guilty of solicitation to commit murder of a government witness. According to the presentence report, Herron had an offense level of twenty-nine and a criminal history category of V. This resulted in an advisory guideline range between 140 and 175 months. However, the presentence report noted that the two firearm counts carried with them mandatory, consecutive sentences of eighty-four and 300 months respectively. These counts resulted in a guideline range of 524 to 559 months. The district court sentenced Herron to 420 month sentence based on a sixteen-level downward departure. Herron then filed this timely appeal of both his conviction and sentence.

II.

A. Herron's Sentence

Herron argues that his sentence violates the Eighth Amendment by being grossly disproportionate to the offense committed and "contrary to evolving standards of criminal justice."

Herron's constitutional challenge to his sentence is a question of law, to be reviewed de novo. *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993). This Court has held that only those "extreme sentences that are grossly disproportionate to the crime are prohibited" by the Eighth Amendment's ban on cruel and unusual punishment. *United States v. Flowal*, 163 F.3d 956, 963-64 (6th Cir. 1998) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 995-97 (1991)).

In this case, Herron was given thirty-five years for two bank robberies, one attempted bank robbery, an escape, and assaulting federal officers. Herron attempts to demonstrate how his sentence is grossly disproportional by listing the potential sentences for a terrorist detonating a bomb (235 months), a second-degree murderer (168 months), and a rapist (eighty-seven months) in comparison with Herron's 420 month sentence for two bank robberies. However, Herron fails to include in this comparison the gun charges, his escape, and the assaults against federal officials which also contributed to his final sentence.

Herron also argues that his sentence is unconstitutional under the Eighth Amendment because the sentence was a result of double counting of his gun charges, creating an excessive punishment. However, Herron's only cite to support this claim is *United States v. Livingston*, 941 F.2d 431, 435-36 (6th Cir. 1991), in which we affirmed the same method of sentencing that was used in this case. Even though the length of the sentence in *Livingston* was different (five years for the first use of a gun in a bank robbery and twenty years for the second count instead of seven and twenty-five years as in this case) it is not availing to Herron given our approval of the very same counting method used here.

Herron also makes an argument challenging the constitutionality of the perceived transfer of power from the judiciary to the prosecutors in making sentencing decisions. However, his argument holds little persuasive power in light of *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held that the federal sentencing guidelines are now advisory, giving greater discretionary power to the district courts in sentencing. Additionally, Herron argues that the failure of a district court judge to be allowed to consider sentencing factors such as Herron's "personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime" is a violation of his due process rights. Again, this argument holds little weight considering that Herron was convicted and sentenced post-*Booker*, where the district court is now permitted and, in fact, obligated to consider each of those factors as it determines a sentence that is "sufficient, but not greater than necessary, to comply with [those] purposes." 18 U.S.C. § 3553(a).

Therefore, we affirm the district court's sentencing of Herron.

B. Herron's Motions to Sever the Counts

Herron appeals the district court's decision to deny his motion to sever the charges against him. This Court reviews a denial from a motion for severance under an abuse of discretion standard. *United States v. Tran*, 433 F.3d 472, 477 (6th Cir. 2006).

Rule 14(a) of the Federal Rules of Criminal Procedure states: "If the joinder of offenses or defendants in an indictment, an information or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires." Herron argues that he was prejudiced by the

inclusion of the felon in possession of a firearm charge, the witness tampering charge, and the escape

charge, which inflamed the jury.

The grant or denial of a motion for severance lies within the sound discretion of the trial

court, whose "determination in this area is thus entitled to great deference." *United States v. Breinig*,

70 F.3d 850, 853 (6th Cir. 1995). Therefore, this Court will overturn such a decision only where

there has been a clear abuse of such discretion. *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.

1996).

It is not clear whether evidence of Herron's escape and assault would have been admissible

at his bank robbery trial even if the charges had been severed. *See United States v. Touchstone*, 726

F.2d 1116, 1119 (6th Cir. 1984) ("flight is generally admissible as evidence of guilt, and . . . juries

are given the power to determine how much weight should be given to such evidence"). Although

evidence of flight can be admissible in some cases, this court has imposed a temporal limitation on

its use.

> The immediacy requirement [of flight evidence] is important. It is the instinctive or
> impulsive character of the defendant's behavior, like flinching, that indicates fear of
> apprehension and gives evidence of flight such trustworthiness as it possesses. The
> more remote in time the alleged flight is from the commission or accusation of an
> offense, the greater the likelihood that it resulted from something other than feelings
> of guilt concerning that offense.

*Id.* (citations omitted). In *Touchstone*, the defendants fled on the third day of their trial. *Id.*

Therefore, whether or not Herron's escape would be admissible at his bank robbery trials, if they

were severed, is unclear in this Circuit given Herron's escape took place almost five months after

being indicted with the crimes. The immediacy requirement would have been a difficult one to prove to allow such evidence into the bank robbery trial.

Even so, the district court's denial of Herron's motion for severance is a somewhat different question. "[T]o prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). Herron has proven that this joinder did prejudice him by allowing the jury to assume guilt based on the presence of the escape charge as to the bank robberies and vice versa. However, our inquiry into this joinder of charges does not end here. "Review of errors involving misjoinder is subject to the harmless error provision of Federal Rule of Criminal Procedure 52(a)." *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir. 2002). "[A]n error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting from *United States v. Lane*, 474 U.S. 438, 449 (1986)). One of the means that a misjoinder may be harmless error is through overwhelming evidence of guilt. *Id.* In this case, there was substantial evidence of Herron's guilt on both the bank robbery charges and the escape-related charges, including the five witnesses who testified to Herron's confessing to them that he committed the bank robberies, clothing worn by the robber and the bank bag were found in Herron's residence, the gun was found within the bank bag, and finally, testimony of Herron's escape and subsequent capture from the federal officers who apprehended him.

In light of this overwhelming evidence, we find the district court's decision to not sever the counts to be harmless error and affirm Herron's conviction.

C.  Herron's Motion to Suppress

Herron appeals the district court's denial of his motion to suppress evidence obtained through search of his residence.  When reviewing a district court's denial of a motion to suppress, this Court applies a two-part standard, reviewing factual findings for clear error and legal conclusions de novo. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

On January 8, 2003, the Owensboro Police Department and the FBI conducted a search of 3236 East Sixth Street in Owensboro, Kentucky, which at the time was allegedly the current residence of both Gerald Morris and Herron.  Morris consented to the search of the residence, which resulted in the police obtaining the bank bag containing a handgun, newspaper clippings about the robberies, and clothes similar to the ones worn by the robber.

Herron argues that the district court should have suppressed the firearm which was found inside the bank bag.  Consent to search a closed container can only be provided by "a third party who possess[es] common authority over or other sufficient relationship to the . . . effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).  Herron argues that the bank bag contains with it an inherent degree of privacy and the bag was completely zipped closed.

The government, on the other hand, states that Morris had common authority over the bank bag because the bag belonged to Morris and had been lent by Morris to Herron in order to hold toiletries.  Additionally, the bag was unlocked and located in a place in the apartment where both Morris and Herron had equal access, a closet located in Morris's bedroom containing clothes belonging to Herron and clothes belonging to Morris.  Given Morris's ownership of the bag and his access to the closet the bag was found in, he possessed common authority sufficient for his consent

to allow a valid search of the bank bag. We therefore affirm the decision of the district court denying the motion to suppress.

D. Directed Verdict

Herron appeals the district court's denial of a directed verdict at trial based on a failure by the government to establish that the incidents at the US Bank and Herron's alleged escape were located within the Western District of Kentucky and, therefore, that venue was correct for those charges. Additionally, Herron argues that the government did not demonstrate that the weapon used at the two bank robberies was a "firearm" as defined by federal law and that Herron was never specifically identified as the person committing these offenses.

*1. Venue*

The government rebuts Herron's argument that venue was never established for the US Bank crimes by relying on the testimony of Annette Statts, the first witness at Herron's trial. She testified that she worked at the "US Bank, 1701 Carter Road in Owensboro." While she never specified what state Owensboro was located in, the trial was taking place in Owensboro, Kentucky and could be inferred from her testimony what state she was referring to. *See United States v. Charlton*, 372 F.2d 663, 665 (6th Cir. 1967) (stating that "[venue] may be shown by circumstantial as well as by direct evidence, and a jury may infer its existence from all the evidence adduced at the trial."). As for Herron's escape, FBI Agent Tim Tschida testified that he was involved in the apprehension of Herron in "Daviess County, Kentucky." Additionally, other officers involved in the apprehension identified the location as Owensboro and referred to "the Dust Bowl," which is an annual celebration in Owensboro, Kentucky.

*2. Sufficiency of the Evidence - Firearm*

In *United States v. Forrest*, 402 F.3d 678, 686-87 (6th Cir. 2005), Forrest, like Herron in this case, objected to whether the government provided sufficient evidence to prove that a firearm was used in the crime. In that case, this Court dismissed the argument based on the fact that the jury had the actual weapon before it and heard testimony that the weapon was loaded. In this case, the jury had the weapon before it, testimony about the ammunition stored with the gun, and testimony that it was capable of expelling a projectile. This was sufficient to prove that a firearm was used in this case.

*3. Identification*

Finally, Herron argues that no witness identified him as the person who committed the crimes he has been charged with. The government rebuts with the testimony of two federal officers who identified Herron as the perpetrator. Additionally, five individuals testified that Herron confessed to the three robberies to them.

Therefore, we affirm the district court's decision to deny Herron's motion for a directed verdict.

E. The Government's Closing Argument

At the end of the government's closing argument, the prosecutor said the following:

> Now, ladies and gentlemen, in opening statements defense counsel said that this case was about Brian Herron's liberty and freedom. I beg to differ. This case is about what our kids say, what we say as kids in the Pledge of Allegiance. At the end of the Pledge of Allegiance what do we say? "And liberty and justice for all." This case is about liberty.

> And what liberty do we have, what liberty do we have that Theresa Payne, Connie Hicks and Jennifer Spinks and tellers at the US Bank can't go to work without someone pointing a gun in their face?

At this point, defense counsel objected and the district court instructed the government to "back off" the line of argument. The government then continued its closing. "This case is about liberty. This case is about justice. Justice, ladies and gentlemen, requires that Brian Herron be held accountable for the crimes that he's committed." Herron now argues on appeal that the district court should have set aside the jury verdict in light of these comments.

Allegations of prosecutorial misconduct contain mixed questions of law and fact that we review de novo. *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005). In reviewing allegations of prosecutorial misconduct, we conduct a two-step inquiry. *Id.* (citing *United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999)). First, we determine if the statements were improper. *Id*. If they were improper, we consider the following factors to determine if the comments were flagrant enough to warrant reversal: (1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused. *Id*.

The government initially in its closing statement asked the jurors to consider the Pledge of Allegiance and the words "liberty and justice for all." This was most likely an attempt by the government in its closing to relate their case to what the defense considered its theme: Herron's liberty and freedom. *See id.* (stating "[i]t is also appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements.") Defense counsel, in

this case, did appear to open the door of the topic of liberty. However, the prosecutor did not stop there. After being warned by the district court to "back off," the prosecutor lept back in with both feet by stating, "This case is about liberty. This case is about justice. Justice, ladies and gentlemen, requires that Brian Herron be held accountable for the crimes that he's committed." While perhaps these comments did not cross the line to impropriety, we must caution future arguments from taking a similar course. One warning should be enough to advise a counsel where not to tread. To take that warning from the district court and then continue to toe the fine line between proper and improper argument shows a lack of respect for the district court's instruction. With that said, this argument appears to have steered just clear of crossing that line.[2]

Even if the government's closing statement was improper, the flagrancy factors favor against a finding of prosecutorial misconduct. While these remarks may have led to inflaming the jury, they were isolated remarks and the record does not demonstrate a pattern of such statements by the government. Additionally, while the remarks by the government appear to have been planned as a part of its closing statement, this factor does not outweigh, again, the enormous level of evidence against Herron: there were five witnesses who testified to Herron's confessing to them that he

---

[2]The government relied heavily in its brief and at oral argument on *Hutchison v. Bell*, 303 F.3d 720 (6th Cir. 2002). In that case, this Court was asked to, on habeas review, examine statements made by the government at the defendant's trial. In *Hutchison*, we held that the government's statements did not rise to prosecutorial misconduct. These statements included stating that "I urge you to look alone to truth and justice in this case and . . . put an end to this evil partnership." and other references to the defendant's "evil ways". *Id.* at 750-51. This case is easily distinguishable from the case before us today. The statements in *Hutchison* were a brief mention of "truth and justice" and then counsel moved on. We do not hold that mentioning those magic words are cause for concern. What concerns this court is the repetition of those words as a theme and, most importantly, the refusal to abandon that theme upon being warned by the district court.

committed the bank robberies, clothing worn by the robber and the bank bag were found in Herron's residence, the gun was found within the bank bag, and finally testimony of Herron's escape and subsequent capture from the federal officers who apprehended him. All of this evidence against Herron favors against a finding of prosecutorial misconduct.

For these reasons, we affirm the district court's decision to not set aside the jury verdict.

III.

For these reasons, we affirm the district court's decisions in this case.

RYAN, Circuit Judge, concurring. I join my brother's opinion in all respects except for the discussion of the district court's denial of Herron's motion to sever. On that question, I am satisfied that the district court did not abuse its discretion in denying the motion. Therefore, in my view, there is no need to conduct a harmless error review.